### IN THE UNITED STATES DISTRICT COURT
### FOR THE SOUTHERN DISTRICT OF ILLINOIS

**CLYDE J. PONTEFRACT,**
**# 13955-035,**

**Petitioner,**

    **vs.**

**WARDEN WALTON,**

**Respondent.**　　　　　　　　　　　　**Case No. 14-cv-1089-DRH**

### MEMORANDUM AND ORDER

**HERNDON, District Judge:**

This case is before the Court for consideration of Petitioner Clyde Pontefract's writ of habeas corpus (Doc. 1). Pontefract, an inmate in the Federal Correctional Institution located in Marion, Illinois ("FCI-Marion"), brings this habeas corpus action pursuant to 28 U.S.C. § 2241 to challenge the deduction of restitution payments from his trust fund account under the Inmate Financial Responsibility Program ("IFRP") (Doc. 1).

This matter is now before the Court for preliminary review of the habeas petition. Rule 4 of the Federal Rules Governing Section 2254 Cases in United States District Courts provides that upon preliminary consideration by the district judge, "[i]f it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court, the judge shall make an order for its summary dismissal and cause the petitioner to be notified." Rule 1(b) of those Rules gives this Court the authority to apply the

rules to other habeas corpus cases, such as this action brought pursuant to Section 2241. For the reasons set forth below, the petition shall be **DISMISSED**.

## I. Background

Pontefract pleaded guilty to production of child pornography on December 22, 2010. *See United States v. Pontefract*, No. 08-cr-00069 (W.D. La. 2008) ("criminal case") (Doc. 133). The United States District Court for the Western District of Louisiana sentenced him to thirty years in prison, followed by supervised release for life (Doc. 175, criminal case). Pontefract's conviction and sentence were affirmed on direct appeal on March 4, 2013 (Doc. 210, criminal case). *See United States v. Pontefract*, No. 12-30094 (5th Cir. 2013). His motion for relief pursuant to 28 U.S.C. § 2255 was denied on October 20, 2014 (Doc. 226, criminal case).

Relevant to the instant petition, no fine was assessed at sentencing, but Pontefract was ordered to make restitution in the amount of $1,385 (Doc. 175, p. 1, criminal case). According to his judgment, "[t]his amount shall be paid beginning thirty days after supervised release begins and shall be made in minimum monthly payments of at least $100 per month until paid in full" (*Id.*). He was also ordered to pay the standard assessment of $100 to the Crime Victim Fund immediately.

## II. Habeas Petition

In his Section 2241 petition, Pontefract now raises several objections to his restitution payment plan under the IFRP. All of the objections pertain to the

Federal Bureau of Prisons' ("BOP") method of computing his payment obligation. Pontefract claims that, by law, the first $75 per month that is deposited into his trust fund account, or $450 per six month period, should be excluded from the computation of his IFRP payments under 28 C.F.R. § 545.11 and BOP Policy Program Statements 5380.08(b) (hereinafter "ITS exclusion") (Doc. 1, p. 2). The ITS exclusion has not been used to compute his payment obligation. Pontefract consistently receives deposits of $75 per month or less. Even so, Warden Walton has authorized the withdrawal of $25 per quarter from his account on five separate occasions.   This has allegedly resulted in an overpayment of $125, and Pontefract seeks reimbursement of this amount.

Pontefract goes on to argue that the ITS exclusion is not consistently used to compute IFRP payments for inmates at FCI-Marion (Doc. 1, p. 3). Some inmates, who are described as "special," receive the "benefit" of the ITS exclusion, while others do not.   Pontefract argues that this practice is discriminatory.  He maintains that the ITS exclusion should be applied equally to all inmates.

Pontefract allegedly filed grievances to address this issue at all levels of the BOP (Doc. 1, p. 2).  According to the petition, the grievances have been denied. The computation method has not changed for his IFRP payments.

Pontefract now seeks an order requiring: (1) application of the ITS exclusion to the computation of his IFRP payments; (2) a refund of $125 in overpayments; and (3) an explanation from the Court as to why inmates are

required to follow grievance procedures when prison officials are not (Doc. 1, pp. 3-4).

### III. Discussion

The IFRP is a "means of executing an inmate's sentence, and thus complaints about the BOP's administration of the program are cognizable under 28 U.S.C. § 2241. *See Ihmoud v. Jett*, 272 Fed. Appx. 525, *1 (7th Cir. 2008) (citing *Matheny v. Morrison*, 307 F.3d 709, 712 (8th Cir. 2002) (stating that challenges to IFRP collection mechanism concern execution of sentence and are therefore correctly framed as §2241 claims); *McGhee v. Clark*, 166 F.3d 884, 885-87 (7th Cir. 1999) (recognizing district court jurisdiction over claims arising from implementation of IFRP); *Valona v. United States*, 138 F.3d 693, 694 (7th Cir. 1998) (stating that motion seeking relief on grounds concerning execution of sentence but not validity of conviction falls under § 2241)). Although this Court has jurisdiction over Pontefract's petition, the Court cannot grant him the relief he seeks. In essence, Pontefract seeks credit for participating in the IFRP program, without the associated financial responsibilities.

To be clear, Pontefract is not disputing that portion of his sentence mandating payment of restitution. He merely takes issue with the method of collecting the monetary obligation. Pontefract contends that the ITS exclusion should be applied to him. Under it, the first $75 of his monthly deposits and the first $450 of all deposits would be exempt from IFRP collection, as provided in 28 C.F.R. § 545.11 and the BOP Policy Program Statements 5380.08.

Pontefract alleges that the only income deposited into his account is $75 for a prison job.  He has not indicated whether he receives money from any other source.[1]  Assuming he does not, strict application of the ITS exclusion exempts Pontefract from making any payments to the IFRP, as long as his trust fund account balance falls below the threshold amount.  At the same time, he could reap the benefits of participation in the program—benefits that may include job training, higher status housing, community-based programs, and higher commissary spending limits.

The Court does not have authority to interfere with the BOP's discretion in its administration of the IFRP program.  *See In Re: Buddhi*, 658 F.3d 740, 741 (7th Cir. 2011).  The Seventh Circuit explained:

> The Attorney General rather than the courts 'shall be responsible for collection of an unpaid fine or restitution' imposed by a judgment, 18 U.S.C. § 3612(c), and he has delegated his authority to the Bureau of Prisons, 18 U.S.C. § 4042(a)(1), which created the Inmate Financial Responsibility Program to facilitate collection.  This delegation is proper, *United States v. Ellis*, 522 F.3d 737, 738-39 (7th Cir. 2008); *Matheny v. Morrison*, 307 F.3d 709, 712 (8th Cir. 2002); *Montano-Figueroa v. Crabtree*, 162 F.3d 548, 550 (9th Cir. 1998) (per curiam), and the 'courts are not authorized to override the Bureau's discretion about such matters, any more than a judge could dictate particulars about a prisoner's meal schedule or recreation (all constitutional problems to the side).'  *United States v. Sawyer*, 521 F.3d 792, 794 (7th Cir. 2008); *see also United States v. Lampien*, 89 F.3d 1316, 1320 (7th Cir. 1996); *United States v. Boal*, 534 F.3d 965, 966 n. 1 (8th Cir. 2008); *United States v. Comer*, 93 F.3d 1271, 1281-82 (6th Cir. 1996).

---

[1] Funds received from outside sources can be considered when computing an inmate's payment obligation.  *See McGhee*, 166 F.3d at 887 (citing 28 C.F.R. § 545.11).  In this case, the Court cannot determine whether other sources of income were considered.  Pontefract does not squarely address this issue in the petition, and he has not filed a certified trust fund account statement with the Court.

*Id.* at 741. In other words, the BOP has discretion to the use the IFRP "to ensure that inmates make good-faith progress toward satisfying their court-ordered obligations." *United States v. Neal*, 207 Fed. Appx. 700, *2 (7th Cir. 2006) (citing *McGhee*, 166 F.3d at 886).   In Pontefract's case, BOP officials developed a payment schedule that enables Pontefract to do so.   These officials determined that "good-faith progress" amounts to something more than zero; it amounts to $8.33/month or $25/quarter for Pontefract.   However, Pontefract wishes to make no progress toward satisfying his court-ordered obligation.

The Court reminds Pontefract that his participation in the IFRP is entirely voluntary.[2]   The judgment in his criminal case does not explicitly require him to participate in the IFRP, and he has made no claim to this effect.   In fact, the Seventh Circuit has repeatedly confirmed that inmates' participation in the IFRP is indeed voluntary, and has found that the consequences that result from a prisoner's decision not to participate in the program do not change the voluntary nature of the IFRP.   *United States v. Boyd*, 608 F.3d 331, 334 (7th Cir. 2010) ("[T]he Bureau of Prisons lacks the power to compel participation in the IFRP . . . . [it] may establish a payment schedule, but a prisoner may choose instead to bear the consequences of not participating." (citing 28 C.F.R. § 545.11(d))). This means that Pontefract can choose not to participate and, in doing so, reduce his payments to nothing.

---

[2] In response to Pontefract's complaint, the National Inmate Appeals Administrator, Harrell Watts, also reminded Pontefract that participation in the program is voluntary: "Inmate participation in the IFRP is completely voluntary, but failure or refusal to make satisfactory progress toward meeting financial obligations may result in the limitation of certain privileges reflective of a demonstration of poor responsibility" (Doc. 1, p. 6).

However, there are consequences associated with non-participation in the program that Pontefract likely wishes to avoid. As stated above, some of the privileges that may be available to those who participate in the IFRP include job training programs, higher status housing, community-based programs, and higher commissary spending limits; these benefits may be suspended for non-participation. *Id.* Therefore, while Pontefract is free to withdraw from the payment program, he must face the consequences of this decision. The choice is his, and the Court finds no basis for granting him relief, based on the allegations in his petition.

Pontefract's related argument regarding the inconsistent application of the ITS exclusion among USP-Marion inmates is more akin to a substantive due process claim. *See Bunn v. Conley*, 309 F.3d 1002, 1006-07 (7th Cir. 2002); *Godinski v. United States*, 304 F.3d 761, 763 (7th Cir. 2002) (stating that the court must evaluate independently the substance of each claim being brought to determine whether the correct statute is being invoked). For federal prisoners, this type of claim must be brought pursuant to *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971). If he chooses to do so, Pontefract may separately file a complaint pursuant to *Bivens* raising such a claim, although this Court expresses no opinion regarding the ultimate merits of such a claim.

Likewise, Pontefract's complaint that prison officials ignored the grievance procedures is not appropriately raised in this habeas action. The Court notes that Pontefract's argument is also unfounded. There is absolutely no indication

that the prison officials ignored the grievance procedure as it pertains to Pontefract.  The petition includes copies of responses to his grievances, and they are comprehensive.  Pontefract seems to confuse a lack of response with a lack of satisfaction.  The fact that Pontefract failed to obtain the results he wanted does not mean he was ignored or that prison officials disregarded his complaints.

For the reasons discussed above, the Section 2241 petition shall be dismissed.

### IV.   Disposition

**IT IS HEREBY ORDERED** that this habeas petition is summarily **DISMISSED** with prejudice, but shall not bar to a subsequent *Bivens* action on the substantive due process and grievance claims.   Respondent **JEFFREY S. WALTON** is also **DISMISSED** without prejudice.

Petitioner has neither paid the $5.00 filing fee associated with this action, nor filed a motion for leave to proceed *in forma pauperis* ("IFP motion"). Dismissal of the petition does not relieve him of his obligation to do so.  Failure to pay the fee or file a properly completed IFP motion within the time prescribed by the Clerk of Courts in the letter dated October 8, 2014 (Doc. 2), may result in the imposition of sanctions.

If petitioner wishes to appeal this dismissal, he may file a notice of appeal with this court within thirty days of the entry of judgment.  FED. R. APP. P. 4(a)(4). A motion for leave to appeal *in forma pauperis* should set forth the issues petitioner plans to present on appeal.   *See* FED. R. APP. P. 24(a)(1)(C).

If petitioner does choose to appeal and is allowed to proceed IFP, he will be required to pay a portion of the $505.00 appellate filing fee in order to pursue his appeal (the amount to be determined based on his prison trust fund account records for the past six months) irrespective of the outcome of the appeal. *See* FED. R. APP. P. 3(e); 28 U.S.C. § 1915(e)(2); *Ammons v. Gerlinger*, 547 F.3d 724, 725-26 (7th Cir. 2008); *Sloan v. Lesza*, 181 F.3d 857, 858-59 (7th Cir. 1999); *Lucien v. Jockisch,* 133 F.3d 464, 467 (7th Cir. 1998). A timely motion filed pursuant to Federal Rule of Civil Procedure 59(e) may toll the 30-day[3] appeal deadline.  To appeal the dismissal of a Section 2241 petition, it is not necessary for petitioner to obtain a certificate of appealability. *Walker v. O'Brien*, 216 F.3d 626, 638 (7th Cir. 2000).

The Clerk is **DIRECTED** to close this case and enter judgment accordingly.

**IT IS SO ORDERED**.

Signed this 3rd day of November, 2014.

Digitally signed by David R. Herndon
Date: 2014.11.03 12:17:13 -06'00'

**District Judge**
**United States District Court**

---

[3] A Rule 59(e) motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment.  FED. R. CIV. P. 59(e).